IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMEKA JUSTICE,

       Plaintiff,                 No. CIV S-10-0915 KJM-KJN

      vs.

COUNTY OF YUBA; et al.,            ORDER

       Defendants.

_____/

       This matter comes before the court on defendants' motion for summary judgment. (ECF 36.)  The court heard the motion on March 9, 2012; Robert Blumenthal appeared for plaintiff and Carl Fessenden and Derek Haynes appeared for defendants.  For the following reasons, defendants' motion is granted in part and denied in part.  Plaintiff's surviving state law claims are dismissed.

I.  FACTS AND PROCEDURAL HISTORY

       Plaintiff was arrested on March 11, 2009 by two Yuba County Sheriff Department deputies on suspicion of violating California Penal Code § 273.5 (aggravated assault/domestic violence).  (ECF 54-1 ¶¶ 44, 45.)  Deputy Thomas Oakes and his partner initially arrived at the residence following a 911 call reporting a domestic disturbance.  (*Id.* ¶¶ 17, 18, 19.)  The

deputies arrived to find plaintiff on her apartment patio, screaming at Matthew Crocker

("Crocker").  (*Id.* ¶ 22.)  The deputies separated the two; defendant Oakes took plaintiff aside to

begin asking questions while his partner did the same with Crocker.  (*Id.* ¶¶ 23, 24.)

The deputies learned that Crocker and plaintiff used to have some degree of

intimate and personal relationship.  (ECF 54-1 ¶¶ 36, 39, 41.)  While the seriousness of the

relationship is now disputed between the pair, plaintiff concedes her relationship with Crocker in

the past had been sexual in nature, included a period of cohabitation and entailed Crocker's

purchasing furniture for plaintiff's apartment, some of which remained in the apartment until the

day in question.  (*Id.* ¶¶ 39, 40, 41.)

The deputies were told Crocker had returned to plaintiff's home to retrieve a

coffee table he had purchased for the apartment.  (ECF 54-1 ¶ 25.)  Crocker, upon entering the

apartment, attempted to remove the coffee table, but was stopped by plaintiff's grabbing the end

of the table and standing in front of the doorway.  (*Id.* ¶¶ 14, 30.)  A struggle ensued, as Crocker

pushed plaintiff against the wall and plaintiff continued trying to pull the table away from

Crocker.  (*Id.* ¶ 15.)  At some point in the struggle plaintiff admitted she bit Crocker's arm,

creating an open wound that the deputies subsequently observed and photographed.  (*Id.* ¶¶ 15,

32, 33.)  After hearing the nature of their relationship, the respective accounts of the struggle and

observing the injury on Crocker's arm, the deputies together concluded there was probable cause

to arrest plaintiff for suspected aggravated assault/domestic violence.  (*Id.* ¶ 45.)  Crocker also

was arrested for the same charge, as well as suspected violation of California Penal Code

§ 602.5(b) (unlawful entry).  (*Id.* ¶ 46.)  Plaintiff ultimately was released on her own

recognizance, without having to pay bail.  (*Id.* ¶ 48.)

Plaintiff now alleges the arrest was unlawful and brings this action against the

arresting officer ("Oakes") and vicariously against Yuba County ("County") as the officer's

principal (collectively "defendants").  (ECF 25 at 3.)  Plaintiff states five causes of action:

1) deprivation of rights guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments,

under 28 U.S.C. § 1983, against Oakes; 2) false arrest, imprisonment and prosecution under applicable state law, against all defendants; 3) intentional infliction of emotional distress under applicable state law, against all defendants; 4) negligent infliction of emotional distress under applicable state law, against all defendants; and 5) bystander liability, asserted on behalf of her son, Acqucer Hill, against all defendants.  (*Id*. at 2, 6-7.)

Plaintiff filed the original complaint on April 16, 2010, followed by the first amended complaint on August 25, 2010.  (ECF 1, 17.)  On October 22, 2010, defendants' motion to dismiss was granted, with leave to amend.  (ECF 24.)  Plaintiff amended the complaint accordingly and filed the operative complaint on October 26, 2010.

Defendants filed this motion for summary judgment on February 6, 2012.  (ECF 36.)  Plaintiff filed an opposition on February 23, 2012.  (ECF 38.)  Defendants filed their reply to the opposition on March 3, 2012.  (ECF 54.)  After hearing the motion, the court allowed plaintiff leave to amend or supplement her opposition, to comply with Local Rule 133.  (ECF 58.)  Plaintiff did amend on March 9, 2012 and March 13, 2012.  (ECF 59, 60.)

II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

---

[1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

1   that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

2   *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to

3   particular parts of materials in the record . . .; or show [] that the materials cited do not establish

4   the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

5   evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

6   ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt

7   as to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of

8   *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the

9   governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at

10  247-48 (emphasis in original).

11      In deciding a motion for summary judgment, the court draws all inferences and

12  views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

13  587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

14  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

15  issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

16  *Co.*, 391 U.S. 253, 289 (1968)).

17  III.  DISCUSSION

18      Plaintiff does not cite to a single piece of evidence or alleged fact in her

19  opposition to defendants' motion.  (*See* ECF 50-51, 59-61.)  While a series of declarations and

20  exhibits are submitted along with her opposition, no facts are incorporated into the arguments for

21  denying defendants' motion.  (ECF 38-49.[2])  Similarly, in the entirety of the opposition, plaintiff

22  cites two California authorities in connection with the issue of plaintiff's son's bystander claim,

23  and a single Ninth Circuit decision on the standards for reviewing an arresting officer's

24  _____

25      [2] Initially these documents were submitted without any authentication as required by
    Local Rule 133.  Following the court's order allowing leave to amend or supplement, plaintiff

26  cured this problem.  Nevertheless, the evidence is not connected to any argument for denying
    defendants' motion.

4

1   perception of probable cause.  (ECF 51 at 2-4.)  The bulk of plaintiff's opposition is used to

2   argue that plaintiff was legally empowered to resort to physical force to defend herself and her

3   property against Crocker, an issue not raised by defendants' motion.  "The district court judge is

4   not required to comb the record to find some reason to deny a motion for summary judgment."

5   *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).  As explained

6   in more detail below, defendants are entitled to summary judgment on plaintiff's federal claims.

7   The court declines to exercise jurisdiction to retain the remaining state law claims.

8        A.   Federal Claims

9            "As in any action under § 1983, the first step is to identify the exact contours of

10  the underlying right said to have been violated."  *County of Sacramento v. Lewis,* 523 U.S. 833,

11  841 n.5 (1998).  Plaintiff alleges violations under the Fourth, Fifth, Eighth and Fourteenth

12  Amendments.  (ECF 25 ¶ 19.)  Defendants argue the claims under the Fifth, Eighth and

13  Fourteenth Amendments fail as a matter of law.  (ECF 36-1 at 1-2.)  As noted, plaintiff does not

14  counter this argument with any authority.

15           1.   Fifth Amendment

16           The "Fifth Amendment's Due Process and Equal Protection Clauses apply only to

17  the federal government, not to state actors."  *Peoples v. Schwarzenegger*, 402 F. App'x 204, 205

18  (9th Cir. 2010); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *Bingue v.*

19  *Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  Both defendants in this case are state actors.

20  Accordingly, plaintiff's Fifth Amendment claim fails as a matter of law and defendants are

21  entitled to summary judgment, as to this claim.

22           2.   Eighth Amendment

23           The basis for plaintiff's Eighth Amendment claim appears to have changed

24  through the course of litigation.  Plaintiff initially pled the Eighth Amendment claim based on

25  alleged unlawful arrest, but later submitted through interrogatory that it was in fact premised on

26  a claim of excessive bail.  (ECF 36-1 at 7.)  Plaintiff's opposition to the pending motion provides

1  no clarification of the discrepancy.  Regardless, "the Eighth Amendment's protection against

2  cruel and unusual punishment applies only to convicted prisoners." *Brown v. Beagley*, 1:10-CV-

3  01460, 2011 WL 149830 (E.D. Cal. Jan. 18, 2011) (citing *Graham v. Connor,* 490 U.S. 386, 395

4  n.10 (1989); *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)).  Plaintiff was neither tried nor convicted

5  of any charges.  If the claim is indeed based on "false arrest, imprisonment and prosecution" as

6  the operative complaint alleges, the Eighth Amendment claim fails as a matter of law because

7  plaintiff was not incarcerated at the time of the alleged injuries.  Even if the claim is instead

8  based on alleged excessive bail, which plaintiff has not pled but has suggested by her

9  interrogatory responses, plaintiff's claim still fails as a matter of law.  The Eighth Amendment

10  states that excessive bail "shall not be required."  CONST. AMEND. VIII.  Although bail was

11  initially set at $50,000, plaintiff was never required to post bail, but rather was released on her

12  own recognizance.  (ECF 54-1 ¶¶ 47-48.)  Plaintiff has made no attempt to establish a dispute of

13  material fact on this point.  Rather, on the record before the court it is undisputed that plaintiff's

14  bail initially was set in accordance with standard booking procedures, and reflected the standard

15  bail for the suspected offense, with Deputy Oakes playing no role.  (Oakes Declaration ¶¶ 11,12,

16  ECF 36-6.)  Defendants are entitled to summary judgment on plaintiff's Eighth Amendment

17  claim.  *See Galen v. County of Los Angeles*, 477 F.3d 652, 661 (9th Cir. 2007).

18              3.      Fourteenth Amendment

19              "Plaintiff cannot allege a violation of the Fourteenth Amendment's substantive

20  due process clause based on [her] allegedly unlawful arrest."  *Daniel v. Holiday Inn Select*,

21  CVF-07-616 OWW TAG, 2008 WL 149144, at *5 (E.D. Cal. Jan. 14, 2008).  "Where a

22  particular amendment provides an explicit textual source of constitutional protection against a

23  particular sort of government behavior, that Amendment, not the more generalized notion of

24  substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,*

25  510 U.S. 266, 273 (1994) (citations and quotation marks omitted).  Plaintiff is does not make

26  clear which other incorporated Amendment provides the basis for the relief she seeks.  In making

6

1   their motion, defendants operate under the assumption it is the Fourth Amendment.  (ECF 36-1

2   at 7.)  In her opposition, plaintiff does not correct or refute this assumption, nor does she provide

3   an alternate source of incorporated rights.  (*See* ECF 50.)  As such, in following the *Albright*

4   court's guidance, the court uses the Fourth Amendment as the guide for analyzing the rest of

5   plaintiff's § 1983 claims.

6           Defendants argue both that defendant Oakes is entitled to qualified immunity, and

7   in the alternative, that there was probable cause for plaintiff's arrest.  The court need only

8   consider the latter question.  "'In a suit against an officer for an alleged violation of a

9   constitutional right, the requisites of a qualified immunity defense must be considered . . .'  'The

10  first inquiry must be whether a constitutional right would have been violated on the facts alleged;

11  second, assuming the violation is established, the question [is] whether the right was clearly

12  established. . . .  If no constitutional right would have been violated were the allegations

13  established, there is no necessity for further inquiries concerning qualified immunity.'"  *John v.*

14  *City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quoting *Saucier v. Katz,* 533 U.S. 194,

15  200-01 (2001)).  While this exact sequencing of inquiry is no longer mandatory, it remains

16  available for the court's use.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  ("Judges of

17  the district courts and the courts of appeals should be permitted to exercise their sound discretion

18  in deciding which of the two prongs of the qualified immunity analysis should be addressed first

19  in light of the circumstances in the particular case at hand.").  Faced with the present set of facts,

20  the court follows the order of analysis originally articulated in *Saucier*.  Accordingly, when

21  looking to alleged wrongful arrests, "[the court] first determine[s] whether [there was] probable

22  cause to arrest. . . ."  *John*, 515 F.3d at 940.  At this stage of the litigation, should the court find

23  an absence of a disputed material fact over the existence of probable cause for plaintiff's arrest,

24  "that ends the inquiry" into qualified immunity.  *See id.*

25          "Probable cause to arrest exists when officers have knowledge or reasonably

26  trustworthy information sufficient to lead a person of reasonable caution to believe an offense

7

1    has been or is being committed by the person being arrested." *United States v. Lopez,* 482 F.3d

2    1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).  "The determination

3    whether there was probable cause is based upon the information the officer had at the time of

4    making the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Considering "the totality of

5    the circumstances known to the arresting officers, [the inquiry is whether] a prudent person

6    would have concluded there was a fair probability that [the person being arrested] had committed

7    a crime." *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986).

8         Plaintiff was arrested for suspicion of violating California Penal Code § 273.5.

9    (ECF 54-1 ¶¶ 44, 45.)  That code section criminalizes "[a]ny person who willfully inflicts upon a

10   person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or

11   father of his or her child, corporal injury resulting in a traumatic condition"  Cal. Penal Code

12   § 273.5.  It is undisputed that the deputies were told by both plaintiff and Crocker that the pair

13   had previously lived together for a brief period and that plaintiff caused the open wound

14   observed on Crocker's arm.  (ECF 54-1 ¶¶ 39, 40, 41.)  Crocker provided additional information

15   concerning the extent of their relationship and said plaintiff first sprayed him with Windex and

16   hit him with the bottle repeatedly, prior to biting him.  (*Id.* ¶¶ 29, 35, 36, 38.)[3]  With this

17   information, the deputies collectively determined there was probable cause to arrest both

18   plaintiff and Crocker.  (*Id.* ¶¶ 45, 46.)

19        Plaintiff has cited to nothing that demonstrates the existence of a disputed issue of

20   material fact as to what the deputies knew, or should have known, at the time of her arrest.  Nor

21   does plaintiff challenge the information available to the deputies at the time as inconsistent with

22   what "a prudent person would have concluded [] was a fair probability" plaintiff violated the

23   law.  *See Smith*, 790 F.2d at 792.  Instead, virtually all of plaintiff's opposition is spent arguing

24   _____

25        [3] In her opposition, plaintiff disputes the Windex bottle attack; however she does dispute
     what Crocker told the deputies prior to the arrests.  (*See* ECF 45 ¶¶ 35, 36, 38.)  The relevant
     material fact is what the deputies knew at the time they concluded there was probable cause.
26   *Smith,* 790 F.2d at 792 (9th Cir. 1986).

that under California law plaintiff had the right to defend herself against Crocker and pointing to inconsistencies between her statements to defendant Oakes and those provided by Crocker. Plaintiff has failed to establish a dispute of material fact as to the issue of probable cause.  The right to self-defense is immaterial to the question of probable cause for effectuating the arrest. "Once probable cause to arrest someone is established ... a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense. ...'" *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).  Likewise, contradictions between plaintiff's and Crocker's accounts to the deputies do not establish a lack of probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).  "To prevail on [her] § 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest [her]."  *George v. City of Long Beach,* 973 F.2d 706, 710 (9th Cir.1992).  Absent a dispute of material fact over the existence of probable cause at the time of the arrest, defendants are entitled to summary judgment on the Fourth Amendment claim.

B.   State Claims

After the granting of summary judgment on plaintiff's federal claims, only state law claims remain.

"A federal district court with power to hear state law claims has discretion to keep, or decline to keep, [the state law claims] under the conditions set out in § 1367(c)." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000, *as supplemented,* 121 F.3d 714 (9th Cir. 1997). One such condition set out in 28 U.S.C. § 1367(c) is when "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367.  Here, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

////

////

////

9

IV.   <u>CONCLUSION</u>

          For the foregoing reasons, defendants' motion is GRANTED IN PART and DENIED IN PART.  Plaintiff's remaining state law claims are DISMISSED.  This case is CLOSED.

          IT IS SO ORDERED.

DATED:  December 18, 2012.

_____
UNITED STATES DISTRICT JUDGE